**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

THOMAS ANDERSON,
                Plaintiff,

v.                                 No. 06-CV-625
                                  (GLS/DRH)

S. BANKS, Correction Officer; and M.
GILMORE, Correction Officer,

                Defendants.

---

**APPEARANCES:**                    **OF COUNSEL:**

THOMAS ANDERSON
00-B-2354
Plaintiff Pro Se
Elmira Correctional Facility
Post Office Box 500
Elmira, New York 14902

HON. ANDREW M. CUOMO     TIMOTHY P. MULVEY, ESQ.
Attorney General for the           Assistant Attorney General
   State of New York
Attorney for Defendants
615 Erie Boulevard West
Suite 102
Syracuse, New York 13204-2455

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Thomas Anderson ("Anderson"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, two DOCS employees, violated his constitutional

---

    [1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

rights under the Fifth, Eighth, and Fourteenth Amendments. Compl. (Docket No. 1). Presently pending is defendants' motion for partial judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Docket No. 13.[2] Anderson has not respond to the motion. For the following reasons, it is recommended that defendants' motion be granted.

## I. Background

The facts are related herein in the light most favorable to Anderson as the non-moving party. See subsection II(A) infra.

At all relevant times, Anderson was housed at Auburn Correctional Facility. Compl. at ¶ 5. On June 14, 2003, an incident occurred between corrections officers and inmates associated with the Bloods, a gang, which resulted in the facility being placed on twenty-four hour lock-down for ten days. Id. at ¶¶ 9-10. On June 24, 2003, Anderson was accused of stealing tobacco from the commissary. Id. at ¶ 11. Anderson was handcuffed by a corrections officer ("C.O.") and escorted back to B-block for transfer to keeplock confinement.[3] Id. at ¶ 13. Upon arrival in B-block, Anderson was turned over to defendant C.O. Banks, who, joined by defendant C.O. Gilmore, escorted Anderson to keeplock. Id. at ¶ 14. Anderson alleges that immediately prior to being escorted, various corrections officers accused him of being friends with the Bloods. Id. at ¶ 15. These sentiments were echoed by defendants as they escorted Anderson to keeplock. Id. at ¶¶ 16-17. Just prior

---

[2]Defendants concede that issues of fact exist with respect to Anderson's claim of excessive force. Defs. Mem.of Law (Docket No. 13, pt. 2) at 1.

[3]"Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." Green v. Bauvi, 46 F.3d 189, 192 (2d Cir. 1995); N.Y. Comp. Codes R. & Regs. tit. 7, § 301.6 (2007).

to his arrival at keeplock, defendants used force against Anderson. Id. at ¶¶ 18-20. Upon arrival at the Special Housing Unit ("SHU"),[4] Anderson was strip-searched, examined by medical staff, and photographed. Id. at ¶¶ 21-22.

On or about June 25, 2003, Anderson was served with two misbehavior reports, both dated June 24, 2003. Compl. at ¶ 23. The first accused Anderson of disobeying a direct order and stealing state property. Id. The second accused Anderson of assaulting staff, violent conduct, threats, disobeying a direct order, noncompliance with locking procedures, and disturbance. Id. The reports were written by Banks and endorsed by Gilmore. Id.

Anderson was transported to the Auburn Mental Health Unit from June 28 to July 1, 2003. Compl. at ¶¶ 25, 28. On or about July 9, 2003, after spending sixteen days in SHU, Anderson was released back into the general population when he did not receive a timely disciplinary hearing. Id. at ¶ 28; Defs. Mem. of Law at 3. This action followed.[5]

## II. Discussion

In his complaint, Anderson alleges that defendants violated his (1) Eighth Amendment rights when they used excessive force during his transport to SHU, (2) Fourteenth Amendment due process rights by filing a false misbehavior report and confining him in

---

[4] SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ." N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b) (2007). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

[5] Anderson filed an action asserting the same claims on October 28, 2003. See Anderson v. Banks, No. 03-CV-1300 (nam/dep). On October 13, 2005, Anderson was granted leave to withdraw the complaint without prejudice. Compl. at ¶ 4 & Ex. A.

3

SHU without a hearing, and (3) Fourteenth Amendment equal protection rights when, liberally reading Anderson's complaint, defendants based their theft accusations on the fact that they believed Anderson was associated with the Bloods.  Defendants move for partial judgment on the pleadings claiming that (1) the Fifth Amendment is inapplicable here, (2) the Eleventh Amendment bars Anderson's claims against the defendants in their official capacities, (3) Anderson has not alleged a liberty interest sufficient to support his due process claim, (4) defendants were not personally involved in Anderson's due process deprivations, and (5) Anderson has failed to allege the existence of purposeful discrimination necessary for an Equal Protection violation.

### A. Legal Standard

"After the pleadings are closed, a motion to dismiss for failure to state a claim is properly brought as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c)." Allan v. Woods, No. 05-CV-1280 (NAM/GJD), 2008 WL 724240, at *1 (N.D.N.Y. Mar. 17, 2008) (citing Maggette v. Dalsheim, 709 F.2d 800, 801 (2d Cir. 1983)).  "The test for evaluating a [Fed. R. Civ. P.] 12(c) motion is the same as that applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998); Burke v. New York, 25 F. Supp. 2d 97, 99 (N.D.N.Y. 1998) (Munson, J.).

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint that states no actionable claim.  When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, "a 'complaint

which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." Gilfus v. Adessa, No. 5:04-CV-1368 (HGM/DEP), 2006 WL 2827132, at *3 (N.D.N.Y. Sept. 30, 2006) (citing De Jesus v. Sears, Roebuck & Co. 87 F.3d 65, 70 (2d Cir. 1996) (internal quotations omitted)).  Thus, dismissal is only warranted if it appears, beyond a reasonable doubt, that the non-moving party cannot prove a set of facts which would support his or her claim or entitle him or her to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Harris v. City of N.Y., 186 F.3d 243, 247 (2d Cir. 1999).

When, as here, a party seeks dismissal against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they 'suggest. . . . .  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . or arguments that the submissions themselves do not "suggest, . . ." that we should not "excuse frivolous or vexatious filings by pro se litigants" . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

Id. (citations and footnote omitted).

### B. Fifth Amendment

Anderson mistakenly asserts his claims under, inter alia, the Fifth Amendment.  Compl. at ¶ 32.  The Fifth Amendment pertains to criminal charges and prohibits the federal government from violating a person's due process rights.  See Public Utilities Comm'n v. Pollak, 343 U.S. 451, 461 (1952); Am. Bankers Mortgage v. Fed. Home Loan Mortgage, 75

F.3d 1401, 1406 (9th Cir. 1996); Birdsall v. City of Hartford, 249 F. Supp. 2d 163, 170 (D. Conn. 2003).  The claims asserted here concern events at a New York State facility allegedly committed by state employees.  Thus, the Fifth Amendment has no application to the allegations of Anderson's complaint and defendants' motion for judgment as to Anderson's Fifth Amendment claim should, therefore, be granted.

### C. Eleventh Amendment

The Eleventh Amendment prohibits suits against a state in federal court unless the state consents or waives its immunity. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. See Quern v. Jordan, 440 U.S. 332, 340-41 (1979).  A suit against a state official in his or her official capacity is a suit against the entity that employs the official.  Farid v. Smith, 850 F.2d 917, 921 (2d Cir. 1988)(citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)). "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer. Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Here, both defendants appear to be named in both their individual and official capacities.  See Compl. at ¶¶ 6-7.  Anderson seeks monetary damages against both defendants in their official capacities in the scope of their respective duties with DOCS.  Thus, the Eleventh Amendment bar applies and serves to bar Anderson's claim for

6

monetary damages against the defendants in their official capacities.

Anderson's claim also seeks the injunctive relief of having defendants committed to terms of "involuntary servitude." Compl. at ¶ 32(C). A suit that seeks injunctive relief against officials acting in their official capacities is not generally barred by the Eleventh Amendment provided that the injunctive relief sought is to enjoin an official to conform his or her conduct to constitutional requirements. See Pennhurst, 465 U.S. at 100; see also Ex parte Young, 209 U.S. 123, 159-60 (1908). A court must inquire whether the complaint seeks prospective, injunctive relief to end an "ongoing violation of federal law." Aiken v. Nixon, 236 F. Supp. 2d 211, 227 (N.D.N.Y. 2002), aff'd, 80 Fed.Appx. 146 (2d Cir. 2003). In this case, the criminal penalty of imprisonment sought by Anderson is neither afforded to Anderson here as he is bringing a civil suit, nor is it an appropriate attempt to make defendants conform their conduct to constitutional requirements. See Brown v. Doe, 2 F.3d 1236, 1243 (2d Cir. 1993) (explaining that plaintiffs have the option of pursuing civil remedies via § 1983 claims or may choose to pursue criminal remedies via criminal statutes since "criminal laws and penalties apply to the police as well as anyone else who commits assault.").

Thus, defendants' motion on this ground should be granted as to both defendants in their official capacities.

### D. Fourteenth Amendment

In his complaint, Anderson repeatedly contends that he was denied "due process of law" in violation of the Fourteenth Amendment. Defendants contend that Anderson has failed to

7

state a cognizable due process claim.

### 1. Liberty Interest

As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the deprivation was atypical and significant in relation to ordinary prison life. Id. at 484; Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996). The fact that in inmate has been disciplined with a SHU confinement alone is insufficient to establish an atypical and significant deprivation.[6] The Second Circuit has articulated a two-part test whereby the length of time a prisoner was placed in SHU as well as " the conditions of the prisoner's confinement in SHU relative to the conditions of the general prison population" are to be considered. Vasquez v. Coughlin, 2 F. Supp. 2d 255, 259 (N.D.N.Y. 1998) (citing Brooks v. DiFasi, 112 F.3d 46, 49 (2d Cir. 1997)).

Anderson's protected liberty interest is his confinement for sixteen days in keeplock. Confinements in SHU or keeplock of less than thirty days will not suffice to demonstrate a protected liberty interest absent other extraordinary circumstances of the confinement

---

[6] T]he Second Circuit has held that at least where the period of confinement exceeded thirty days, "refined fact-finding" is required to resolve defendants' claims under Sandin. Colon v. Howard, 215 F.3d 227, 230 (2d Cir. 2000)). No such fact-finding can occur here on a motion for judgment on the pleadings. However, because the period of Anderson's confinement in SHU was less than thirty days, such fact-finding is not required.

8

demonstrating that it was atypical or significant for other reasons. See Sandin, 515 U.S. at 485-86; Colon, 215 F.3d at 231; Thompson v. LaClair, No. 9:08-CV-37 (FJS/DEP), 2008 WL 191212, at *3 (N.D.N.Y. Jan, 22, 2008) (quoting Smart v. Goord, 441 F.Supp.2d 631, 640 (S.D.N.Y.2006). Thus, it appears that the length of time Anderson spent in SHU was insufficient, in and of itself, to establish an atypical and significant hardship.

Additionally, absent some other allegations indicating hardship conditions, "there are many similarities in the treatment of inmates confined to SHU and the general inmate population." Vasquez v. Coughlin, 2 F. Supp. 2d 255,,260 (N.D.N.Y. 1998). However, Anderson was not only confined in SHU, he was sent to the Auburn Mental Health Unit and placed on suicide watch for approximately three days. Compl. at ¶¶ 25-27. Sandin noted two examples of hardships that would qualify as atypical and significant: "a prisoner . . . be[ing] transferred involuntarily to a state mental hospital for treatment of a mental disease . . . [and] the involuntary administration of psychotropic drugs." Sandin, 515 U.S. at 479 n.4; see also Vitek v. Jones, 445 U.S. 480, 493-94 (1980) (holding that while a criminal conviction extinguishes an individual's right to be free from confinement, it "do[es] not authorize the State to classify him [or her] as mentally ill and subject him [or her] to involuntary psychiatric treatment without affording him [or her] due process protections.").

There is no question that mental health treatment during SHU confinement is an atypical condition as compared to similarly situated inmates. To determine whether this confinement rises to the level of a protected liberty interest, Sandin provides three factors to consider: "1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody," and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint

9

imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence." Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003) (citing Sandin, 515 U.S. at 486-87)).

While it is unclear whether the mental health visit was an involuntary commitment, there were no allegations or indications that Anderson was sent to the mental health unit for psychiatric treatment, only monitoring and observation. Thus, Anderson's circumstance is immediately distinguishable from that contemplated in Sandin and discussed in Vitek. Additionally, Anderson acknowledges a history of depression, anxiety, sleep disorder, and extreme paranoia and that he was referred to the mental health unit only after refusing to eat for four days, suffering from extreme depression, and being unable to sleep. Compl. at ¶¶ 24-25. Anderson asserts that while on suicide watch, his quarters were far different and more austere than the SHU conditions as he was without a pillow, sheets, and blankets. Id. at ¶ 26.

However, these precautions were justified and did not constitute a hardship given Anderson's mental health history and current symptoms. See Nwaokocha v. Sadowshi, 369 F. Supp. 2d 362, 373 (E.D.N.Y. 2005) (finding that, where a prisoner is mentally ill and displaying "significant warning signs" of an altered mental state, "time of segregation on a justified suicide watch" falls within the purview of discretionary confinement decisions made by the corrections department and normally expected by a prisoner implicating no liberty interest);[7] Rogers v. Paquet, No. 01-CV-969-X, 2001 WL 1148256, at *3 (N.D. Tex. Sept.

---

[7] In Nwaokocha, the Court also discusses an important policy concern surrounding the "emotional and psychological challenge[s] that prison imposes on mentally ill inmates, and the sometimes severe effects that can result - including, but not limited to, inmate suicides . . . ." Nwaokocha, 369 F. Supp. 2d at 374. That court cautions that given these

18, 2001) (holding that suicide watch is a custodial classification within the prison official's discretion and subject to deference, except in extreme circumstances).

Moreover, the length of the mental health observation was only seventy-two hours. See Cherer v. Frazier, No. 06-CV-502 (PMP/LRL), 2007 WL 2406844, at *6 (D. Nev. Aug. 16, 2007) (holding that the prisoner did not have a liberty interest but finding that five months on suicide watch without a hearing was a significant length of time).  This extremely short time and limited degree of restraint supports defendants' contentions.  Additionally, the three days in the Auburn mental health unit did not affect the duration of Anderson's confinement. Therefore, Anderson's contentions are insufficient to indicate that the SHU conditions he experienced were atypical or significant as would demonstrate a protected liberty interest.

Accordingly, defendants' motion on this ground should be granted.

### 2. False Misbehavior Report

Liberally construing Anderson's complaint, he alleges that defendants submitted false misbehavior reports which resulted in an unjustified term in SHU.  As discussed supra, an inmate has a right not to be deprived of a liberty interest without due process.  However, a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)).  "There must be more, such as retaliation against the prisoner for exercising a constitutional right." Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (citing Franco v. Kelly, 854 F.2d 584, 588-90 (2d Cir.

---

stressful conditions, "it is important that prison officials be encouraged to attend to mental health considerations rather than be penalized for having done so." Id.

1988)).

In this case, Anderson has not alleged, and the complaint would not support, a retaliation claim[8] as Anderson was neither engaged in a constitutionally protected activity nor was that activity the basis for the alleged false misbehavior report. Moreover, Anderson's due process and equal protection claims are also insufficient for the reasons discussed. Since Anderson cannot prevail in proving any other constitutional deprivation, his due process claim on this ground must also fail.

Therefore, assuming a due process claim has been alleged here, defendants' motion as to that claim should be granted.

### 3. Equal Protection

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. Essential to that protection is the guarantee that similarly situated persons be treated equally. City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). "In order to establish an equal protection violation, the plaintiffs must show that they were treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination." Myers v. Barrett, No. 95-CV-1534, 1997 WL 151770, at *3 (N.D.N.Y. Mar. 28, 1997) (Pooler, J.). In

---

[8] In order to state an actionable claim for retaliation, a plaintiff must first allege that the plaintiff's conduct was constitutionally protected and that this protected conduct was a substantial factor that caused the adverse action against plaintiff. Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). However, courts must view retaliation claims with care and skepticism to avoid judicial intrusion into prison administration matters. Id. Conclusory allegations alone are insufficient. Id. (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (explaining that "claim[s] supported by specific and detailed factual allegations . . . ought usually be pursued with full discovery.")).

12

addition, a valid equal protection claim may be brought by a "class of one" "where the plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Neilson v. D'Angelis, 409 F.3d 100, 105 (2d Cir. 2005).

Here, liberally construing Anderson's complaint, he appears to allege that based on his African-American race, the corrections officers associated him with the Bloods and, from that presumed association, classified him as a thief.  However, Anderson's allegations that he was denied equal protection are vague and conclusory and thus have failed sufficiently to show an equal protection violation.  See De Jesus v. Sears Roebuck & Co., Inc., 87 F.3d 65, 70 (2d Cir. 1996).  Equally significant here is that the complaint contains no allegation as to which inmates in a similar situation were treated differently than Anderson.  Oliver v. Cuttler, 968 F. Supp. 83, 88 (E.D.N.Y. 1997).

Therefore, it is recommended that defendants' motion on this ground be granted.

### E.  Personal Involvement

Defendants contend that Anderson has failed to establish their personal involvement. Defs. Mem. of Law at 5.  "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority.  Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

In this case, Anderson specifically alleges that defendants authored the false misbehavior reports which resulted in his SHU confinement. Compl. at ¶ 23. Therefore, because the complaint alleges defendants' direct participation in the constitutional violations, Anderson has sufficiently detailed defendants' personal involvement.

Accordingly, defendants' motion on this ground should be denied.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for partial judgment on the pleadings (Docket No. 13) be **GRANTED** and that judgment be granted to both defendants as to all claims except for Anderson's Eighth Amendment claim of excessive force against both defendants in their individual capacities, which should continue.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: May 19, 2008
       Albany, New York

_David R. Homer_
United States Magistrate Judge